1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8   JOSEPH M. ANDERSON,              )        3:16-cv-00056-RCJ-WGC

9              Plaintiff,            )        **REPORT & RECOMMENDATION**
                                     )        **OF U.S. MAGISTRATE JUDGE**
10          vs.                      )
                                     )
11  JAMES "GREG" COX,                )
                                     )
12             Defendant.            )
    _____ )

13

14          This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United

15  States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

16  § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

17          Before the court is Defendants' Motion for Summary Judgment. (ECF No. 27, exhibits at ECF

18  Nos. 27-1 to 27-18.) Plaintiff filed a response. (ECF No. 33; exhibits  at ECF Nos. 34-1 to 33-10,

19  erratum at ECF No. 37[1]; authenticating declaration at ECF No. 35). Defendants filed a reply. (ECF No.

20  39, exhibits at ECF Nos. 39-1, 39-2.) The court granted Plaintiff leave to conduct certain discovery and

21  afforded the parties a chance to supplement their briefing. (Minutes at ECF No. 46.) Plaintiff filed

22  objections to the court's rulings, which were overruled. (ECF Nos. 47, 48, 59.) The parties filed their

23  supplemental briefing. (Pl.'s Suppl. at ECF No. 51; Defs.' Suppl. at ECF No. 55, exhibits at ECF Nos.

24  55-1, 55-2.) The undersigned recently issued an order denying Plaintiff's request under Federal Rule of

25  Civil Procedure 56(d) to delay consideration of the dispositive motion so that he could conduct

26  discovery. The undersigned has also issued a report and recommendation that Plaintiff's motion for leave

27  _____

28      [1]
             In the errata, Plaintiff states he wants to delete the exhibit appearing at ECF No. 34-9 at 38, and substitute it with

    corrected document, which appears at ECF No. 37 at 4.

to amend to add new claims against new defendants be denied.

After a thorough review, the court recommends that Defendants' motion be granted, except as to the retaliation claim against Defendant Parks.

# I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Pl.'s Am. Compl., ECF No. 7.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Defendants are Jonathan Ball, Quentin Byrne, Tara Carpenter, James "Greg" Cox, Ray East, Sheryl Foster, Kara Krause-LeGrand[2], Robert LeGrand, E.K. McDaniel, Valaree Olivas, Jethro Parks, and James Stogner. (Screening Order, ECF No. 8.)

Plaintiff filed his original Complaint, which the court screened and allowed some claims to proceed, and granted Plaintiff leave to amend with respect to others. (ECF Nos. 5, 6.) He subsequently filed his Amended Complaint (ECF No. 7.) The court screened the Amended Complaint and allowed the following claims to proceed: (1) claims under the First Amendment Free Exercise Clause and Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), in Count I against Cox, McDaniel, Foster, Stogner, Krause-LeGrand, Olivas, East and Ball, based on allegations that: (a) Cox, McDaniel, Foster, Stogner and Krause-LeGrand changed Administrative Regulation (AR) 810 to deny Wiccans (Plaintiff's faith) access to incense, herbs and teas while other faiths have the ability to purchase these items, (b) Olivas interfered with the religious grounds by destroying the sacred ritual area where Wiccans and other pagans practice their faith, and (c) East and Ball deprived him of his religious property; (2) a First Amendment retaliation claim in Count I against Parks based on the allegation that Parks subjected Plaintiff to oppressive cell searches because of his religion, and the searches were intended to chill his right to practice his religion without advancing any legitimate correctional goal; (3) an Equal Protection Clause claim in Count II against Cox, McDaniel, Foster, Krause-LeGrand, Stogner and LeGrand, based on allegations that they excluded Wiccans from access

---

[2] Krause is also referred to by the parties as Krause-LeGrand, and is distinct from defendant Warden Robert LeGrand. The court will refer to her as Krause-LeGrand.

to the previously permitted religious materials while allowing mainstream religious faith groups access to those items; and (4) conspiracy claims under 42 U.S.C. § 1985(3) against Cox, McDaniel, Foster, LeGrand, Carpenter, Byrne, and Olivas, based on allegations that they fostered a policy of harassing cell searches directed at Wiccans and impeded Plaintiff's efforts to seek changes to the alleged discriminatory policy. (ECF No. 8.)

Defendants have filed a motion for summary judgment arguing: (1) Plaintiff failed to properly exhaust his administrative remedies regarding his First Amendment Free Exercise Clause and RLUIPA claims against Cox, McDaniel, Foster, Stogner, and Krause-LeGrand; (2) Plaintiff failed to properly exhaust his administrative remedies regarding his Free Exercise Clause and RLUIPA claims against Olivas; (3) Plaintiff failed to exhaust his administrative remedies with respect to his Equal Protection Clause claim against Cox, McDaniel, Foster, Krause-LeGrand, Stogner and LeGrand; (4) Plaintiff failed to exhaust his administrative remedies as to the conspiracy claims against Cox, McDaniel, Foster, LeGrand, Carpenter, Byrne, and Olivas; (5) the First Amendment Free Exercise Clause and RLUIPA claims against East and Ball are barred by the statute of limitations; and (6) Parks did not retaliate against Plaintiff. (ECF No. 27.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

3

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that

4

"the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

That being said,
[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Exhaustion**

**1. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the merits of the suit." *Id*. at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). If there are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id*. at 1171.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process). The ultimate burden of proof, however, remains with the defendant. *Id*.

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "[s]ection 1997e(a)

requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738).

If the court concludes that administrative remedies have not been properly exhausted, the unexhausted claim(s) should be dismissed without prejudice. *Wyatt*, 315 F.3d at 1120, *overruled on other grounds by Albino*, 747 F.3d 1162.

"If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." *Albino*, 747 F.3d at 1171.

### 2. NDOC's Exhaustion Process

Within NDOC, the exhaustion process is governed by Administrative Regulation (AR) 740. (ECF No. 27-17 (effective June 16, 2014), ECF No. 27-18 (effective February 12, 2010).) An inmate is supposed to attempt to resolve grievable issues through discussion with their caseworker, and then must complete three levels of grievance review—informal, first and second levels— in order to exhaust administrative remedies. (ECF No. 27-17 at 5-9, ECF No. 27-18 at 5-8.) When an inmate is dissatisfied with a response at any level, he may appeal to the next level, within the substantive and procedural requirements set forth in AR 740. (ECF No. 27-17 at 4, ECF No. 27-18 at 4.)

/ / /

/ / /

### 3. Free Exercise and RLUIPA Claims against Cox, McDaniel, Foster, Stogner and Krause-LeGrand in Count I

Plaintiff alleges that Cox, McDaniel, Foster, Stogner, and Krause changed AR 810 to deny Wiccans access to incense, herbs and teas used in Wiccan rituals while other faiths still have access to those items. (ECF No. 7 at 8.)

Defendants argue that Plaintiff failed to fully and properly exhaust his administrative remedies *prior to* initiating his lawsuit. (ECF No. 27 at 12.) Defendants state that Plaintiff's grievance 20063012337 contained most of the allegations that survived screening, including that Defendants changed AR 810 to deny incense and other religious items to Wiccans. (ECF No. 27 at 13.) They contend that he filed this grievance on November 26, 2015, four days before he filed his original complaint in State court on November 30, 2015; therefore, he could not have fully exhausted his administrative remedies with respect to these claims *prior* to filing his complaint. (*Id.*)

In response, Plaintiff argues: (1) he exhausted these issues in grievance 20062987519; (2) defendants failed to fully respond to grievance 20063012337; and (3) NDOC failed to respond to his requests to the Religious Review Team (RRT). (ECF No. 33 at 4-7.)

#### a. Grievance 20063012337

Plaintiff's informal level grievance for grievance 20063012337 is dated November 26, 2015. (ECF No. 27-4 at 2, 4-22.) In it, he complained he had not been provided responses to the Religious Review Team (RRT) forms submitted in November 2014, when he requested religious items for his Wicca religious practices. (*Id.*) He noted that the RRT form (DOC 3505) advised him to allow for 120 days for a response and answer. (ECF No. 27-4 at 4.) He claimed that AR 810 was not being followed. (*Id.*) He went on to state that he needed his incense, resins, herbs/plants, herbal teas and meditation for his Wiccan religious practices. (*Id.*) He indicated that incense, resins and herbal teas were previously available, but then were removed from AR 810. (*Id.*) He voiced his belief that the dilatory response to his RRT request was intentional, and was done to impair his ability to follow the "chain of command" at LCC, and hindered his right to address his grievances and exhaust administrative remedies. (ECF No. 27-4 at 4-5.) He went on to assert that LCC authorities were violating his right to exercise his religious beliefs by denying him the use of incense, herbs, herbal teas and resins necessary for his practices.

(ECF No. 27-4 at 5.) He attached the kites he sent to LCC's Chaplain Carrasco, and other kites regarding on-going religious issues at LCC, to which he claimed he had received no response. (ECF No. 27-4 at 6, 9-21; ECF No. 27-4 at 9, 10, 11, 12, 13, 17, 18.)

Plaintiff signed for the response to the informal level grievance on December 9, 2015. (ECF No. 27-4 at 2.)

### i. Did Plaintiff exhaust his administrative remedies with respect to the claims asserted in grievance 20063012337 *prior* to filing this action?

Plaintiff asserts that he never received a response to the second level of this grievance, but Defendants do not argue that Plaintiff did not complete the grievance process for this grievance. Instead, they argue he did not do so *prior* to initiating this action.

The PLRA requires the exhaustion of administrative remedies *prior* to the filing of an action under section 1983 or other federal law. 42 U.S.C. § 1997e(a); *see also McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam) (exhaustion requirement does not permit prisoner to file complaint addressing non-exhausted claims even if he exhausts while the case is pending). Allowing a plaintiff to proceed with claims without having exhausted *prior to* filing his complaint would create an end-run around the PLRA, which provides that "[n]o action shall be brought with respect to prison conditions … until such administrative remedies as are available are exhausted." 28 U.S.C. § 1997e; *Vaden v. Summerhill*, 449 F.3d 1047, 1050-51 (9th Cir. 2006). In *Vaden*, the Ninth Circuit held that a prisoner is required to exhaust administrative remedies before he tenders his complaint to the district court, and claims exhausted after the complaint has been tendered to the district court, but before the court grants permission to proceed in forma pauperis and the complaint is formally filed must also be dismissed pursuant to the PLRA. *Vaden*, 449 F.3d at 1050-51.

This grievance contained allegations that Defendants changed AR 810 to deny incense and other religious items to Wiccans. He started this grievance process on November 26, 2015, four days before he filed his original Complaint in State court on November 30, 2015. (ECF No. 1-2.) Plaintiff did not get a response to the informal level grievance until December 9, 2015, so there is no way he could have completed exhaustion as to this grievance *before* he filed his Complaint.

The court will now address whether this outcome changes when it considers that Plaintiff filed an Amended Complaint.

In *Rhodes v. Robinson*, the prisoner "asserted properly exhausted claims in his original complaint and later raised *new, properly exhausted*, claims in his [Second Amended Complaint]." *Rhodes v. Robinson*, 621 F.3d 1002, 1006 (9th Cir. 2010). There, both of the complaints were brought under section 1983 against the same defendants. *Id*. The Ninth Circuit agreed that filing the amended complaint was the "functional equivalent of filing a new complaint … and it was only at that time that it became necessary to have exhausted all of the administrative remedies' prerequisite to bringing the new claims in the amended complaint." *Id*. In addition, the court found that the amended complaint was a supplemental complaint under Rule 15(d) because the claims arose *after* the filing of the original complaint. *Id*. (citations omitted).

"'[A] prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation.' If, however, a plaintiff files an amended complaint *adding new claims based on conduct that occurred after the filing of the initial complaint*, the plaintiff need only show that the new claims were exhausted before tendering the amended complaint to the clerk for filing." *Akhtar v. J. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012) (emphasis added) (quoting *McKinney*, 311 F.3d at 1199 and *Rhodes*, 621 F.3d at 1007).

In addition, "claims that arose as a cause of action prior to the filing of the initial complaint may be added to a complaint via an amendment, as long as they are administratively exhausted *prior to* the amendment." *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014) (emphasis added).

Here, Plaintiff filed his original complaint in State court on November 30, 2015. (ECF No. 1-2.) It was removed by Defendants to federal court on February 4, 2016. (ECF No. 1.) The Complaint named, among others, Cox, McDaniel, Foster, Stogner and Krause-LeGrand.[3] (ECF No. 6 at 1-4.) The first count of the original complaint alleged, like count I of the Amended Complaint, that Defendants removed from AR 810 previously approved religious items including incense, teas and herbs. (ECF No. 1-2 at 8, ECF No. 6 at 8.)

---

[3] It named both Kara Krause and K. LeGrand. (ECF No. 6 at 4.)

The original Complaint was screened by the court on July 19, 2016. (ECF No. 5.) The court allowed the claims in Count I, which are substantially the same as those asserted in the Amended Complaint, to proceed against Olivas, East and Ball, but dismissed as to the other defendants because Plaintiff did not connect the allegations with the remaining defendants. (ECF No. 5 at 5-6.)

Plaintiff filed his Amended Complaint nearly a month later, on August 16, 2016. (ECF No. 7.) He essentially inserted the names of Cox, McDaniel, Foster, Stogner and Krause-LeGrand before the allegations that he had included in paragraphs 6, 8, 9, 14, and 15 of Count I of the original Complaint. (*Compare* ECF No. 6 at 8-10 with ECF No. 7 at 8-10.)

Unlike *Cano*, it cannot be said that he added new claims or parties to the Amended Complaint that occurred prior to the filing of the original Complaint. *Cano* involved a plaintiff who had filed suit alleging an Eighth Amendment violation arising out of deficient mental health care. *Cano,* 739 F.3d at 1215-16. He later amended to add First and Fourteenth Amendment claims concerning his right to exercise his religion and his access to the courts. *Id.* at 1216. The First and Fourteenth Amendment claims arose prior to the filing of the suit, but the plaintiff did not include them in the original complaint, and did not include them until they were exhausted, at which time he filed an amended complaint. *Id.* at 1220. The Ninth Circuit reasoned that dismissing those claims would not serve the purpose of the PLRA which "is to discourage frivolous prisoner lawsuits and reduce resulting costs on society by decreasing the burden on the courts." *Id*. (citation omitted). This is because dismissing the claims would force the plaintiff to file a separate lawsuit regarding those claims, since they had been dismissed without prejudice. *Id*. at 1220-21.

Here, Plaintiff filed his amended complaint, but he did not assert *new* claims. He simply asserted the same claims that had been stated in the original complaint against the same defendants named in the original complaint, but was merely more particular about which defendants were implicated with respect to each claim. Therefore, this case is distinguishable from *Cano*. *See Giles v. Felker,* No. 2:11-cv-1825-WBS-EFB P, 2016 WL 758729 at n. 1 (E.D. Cal. Feb. 26, 2016) ("*Cano* did not overrule *Vaden* or *McKinney* and, accordingly, district courts have interpreted these cases together to mean that only *new* claims may be exhausted after suit and then be added to an amended complaint, but that the plaintiff may not exhaust claims raised in the original complaint after filing and then seek to cure the failure to exhaust

by filing an amended complaint."), *affirmed in unpublished decision,* 2017 WL 1420382 (9th Cir. Apr. 21, 2017) ("exhaustion of administrative remedies before filing an amended complaint alleging the same claims does not constitute proper exhaustion"); *see also Gomez v. Borges,* Case No. 1:15-cv-00726-LJO-SAB (PC), 2017 WL 1355832, at *3 (E.D. Cal. Mar. 10, 2017) (plaintiff did not bring new claims within the meaning of *Rhodes* or *Cano*); *Gibbs v. Sanchez,* No. CV 15-4954-RGK (PLA), 2016 WL 6127649 (C.D. Cal. Aug. 25, 2016) (plaintiff did not raise any new claims in the amended complaint, but each defendant and all three claims stated in the amended complaint were raised in the original complaint); *Vanvalkenburg v. Or. Dep't of Corr.*, 3:14-cv-00916-BR, 2016 WL 2337892, at * 12 (D. Or. May 2, 2016) (*Cano* and *Rhodes* do not apply when a plaintiff does not bring any new claims in an amended complaint, and an action is brought when the plaintiff filed the complaint that first raised the claim); *O'Neal v. Peterson*, No. 2:13-cv-1054 KJN P, 2015 WL 1183593, at n. 2 (E.D. Cal. Mar. 13, 2015) (finding *Cano* inapplicable because the plaintiff raised his claims against the defendants in the original complaint, stating "these are not 'new' claims."); *Ricks v. Doe*, No. 1:10-cv-02256-LJO-SKO (PC), 2015 WL 673035 at *5 (E. D. Cal. Feb. 17, 2015) (Eighth Amendment claim was alleged in original complaint).

In sum, the court finds that Plaintiff failed to exhaust his administrative remedies with respect to the claims asserted in grievance 20063012337 *prior* to initiating this action.

### ii. Were administrative remedies otherwise available?

Plaintiff appears to argue that administrative remedies were unavailable to him because he submitted requests for accommodation of religious practice forms (DOC 3505) to the RRT that went unanswered. Defendants acknowledge that AR 810.3 requires an inmate to first attempt to have a new piece of religious property or religious ceremony approved by the RRT via such a request prior to filing a grievance under AR 740. (EC No. 39 at 4-7.) They point out, however, that this only applies when an inmate is requesting new group or personal religious property. (ECF No. 39 at 6.) The court agrees with Defendants. AR 810 provided that:

> When any group/individual wishes to have the NDOC add *new* allowable Faith Group Property and/or Personal Religious Property to the Faith Group Overview, they must use the process set forth within this section. This process must be completed before a grievance is filed pursuant to AR 740, Inmate Grievance Procedure.

12

(34-3 at 25, Religious Practice Manual effective February 12, 2014.) The process included completing a Request for Accommodation of Religious Practices Form (DOC 3505) and submitting it to the chaplain with supporting documentation. There was then a review process by the RRT, and the RRT was to make a recommendation to the Deputy Director, who would render a decision to the RRT, who was then to forward it on to the inmate. (ECF No. 34-3 at 25-26.)

Plaintiff was not requesting new religious property, but took issue with these defendants changing AR 810 to deny Wiccans access to incense, herbs and teas that had previously been permitted while other faith groups still had access to those items. Plaintiff admits as much. (ECF No. 33 at 5 ("Plaintiff was not seeking a new item when the incenses and herbal teas were restricted and removed for his religious practices. There was no remedy to use except for A.R. 740[.]"); ECF Nos. 7-6 at 50, 7-7 at 1 (in his first level grievance of grievance 20062987519 he argued he was not requesting new religious property); ECF No. 7-7 at 3 (he reiterated in his second level grievance 20062987519 that this claim did not implicate AR 810's requirement to use DOC 3505).) Since Plaintiff's allegations did not implicate AR 810.3, Plaintiff was free to go ahead with filing a grievance, and did so when he filed grievances 20063012337 and 20062987519. Therefore, his argument that his administrative remedies were unavailable because his requests to the RRT went unanswered is unavailing under these circumstances.

### b. Grievance 20062987519

Plaintiff also argues that he exhausted these claims in grievance 20062987519. Plaintiff included this grievance as an exhibit to his Amended Complaint. He filed the informal level grievance on October 28, 2014. (ECF No. 7-6 at 40-48.) He asserted that the then-current version of AR 810 violated his right to exercise his religious beliefs due to the removal of religious items from the Faith Group Overview that were previously allowed. (*Id*. at 40-41.)

Tara Carpenter responded on December 3, 2014, with an improper grievance memorandum finding the grievance was untimely. (ECF No. 7-6 at 49.) She noted that the version of AR 810 Plaintiff complained about went into effect on October 15, 2013, and the version of the religious practice manual went into effect on February 12, 2014. (*Id*.) Since the grievance was filed on October 28, 2014, she found Plaintiff was outside the time frame to grieve the policies and procedures set forth in AR 810, citing AR 740.05(4). (*Id*.) She also stated that Section 11(c) of the Religious Practice Manual provided

13

that when an inmate sought to have NDOC add new allowable Faith Group Property and/or Religious Personal Property to the Faith Group Overview, they must use the process set forth in AR 810 before filing a grievance under AR 740. (*Id.*) Plaintiff did not submit the Request for Accommodation of Religious Practices (DOC 3505) until November 12, 2014, fifteen days after filing his grievance, therefore, the grievance was also found to be premature. (*Id.*)

Plaintiff filed a first level grievance, arguing the grievance was timely because a denial of a major component began on September 2, 2014, when Chaplain Carrasco was told not to approve any more incense for pagans, as they had been told they would be allowed to continue ordering incense when "the A.R. 810 error occurred." (ECF No. 7-6 at 50.) Regarding DOC 3505, he asserted that incense and herbs were not new components, so the provision requiring an inmate to utilize the procedures of AR 810 before filing a grievance under AR 740 did not apply. (ECF Nos. 7-6 at 50, 7-7 at 1.)

Carpenter issued Plaintiff another improper grievance memorandum. (ECF No. 7-7 at 2.) He was advised: "Due to procedural guidelines you improperly submitted your grievance as such will not be accepted at any level." (*Id.*)

Plaintiff proceeded to file a second level grievance. (ECF No. 7-7 at 3-4.) He stated that they were wrong to deny review of the grievance because it was about civil rights violations. (*Id.* at 3.) He reiterated that his grievance did not implicate the provisions of AR 810 requiring him to utilize DOC 3505 before filing a grievance, and that AR 810 was changed and resulted in a denial of the tools he needed to practice his faith that had previously been available to him. (*Id.* at 4.) The second level grievance was also deemed improper due to the violation of procedural guidelines. (*Id.* at 5.)

The court finds, as it did with respect to grievance 20063012337 above, that Plaintiff's grievance, by and large, did not seek the addition of *new* religious property. Instead, it sought to restore religious items that were previously permitted. Therefore, it did not trigger the application of AR 810 requiring the use of DOC 3505 before filing a grievance. Consequently, this was not a proper reason for NDOC to reject grievance 20062987519. Notably, the court's determination is consistent with the position taken by Defendants in this litigation, though it is inconsistent with the second reason proffered by Carpenter for rejecting this grievance as improper. The court can only assume that Carpenter took this position because there is one sentence in the nine-page informal level grievance where Plaintiff says (in light of

the changes made to AR 810), he could not follow his faith unless AR 810 was expanded to include "new materials to prepare natural resins by adding new herbs of incense quality, mortar & pestle, binding agents (resins), herbs central to specific fragrances, and adding new materials of natural/essential oils…specific to fragrant scents (not currently available)." (ECF NO. 7-6 at 46.) To the extent the grievance can be read to seek new materials in light of this sentence, then it was properly rejected as premature.

Regardless, the court will address whether NDOC properly rejected the grievance as untimely under AR 740.

The informal level grievance was filed on October 28, 2014. (ECF No. 7-6 at 40.) Plaintiff asserted that the then-current version of AR 810 along with its practice manual and Faith Group Overview violated his right to exercise his religious beliefs as a Wicca at LCC. (*Id*.) He took issue with the removal of religious items from AR 810's Faith Group Overview resulting in the denial of incense, natural resins, herbal teas and herbs previously approved for use by Wiccans. (*Id*. at 41.) He reiterated that his religious rights were violated when NDOC's deputy director and LCC's warden and chaplains removed religious items used by Wiccans from AR 810's Faith Group Overview, that were previously allowed. (*Id*. at 42, 43.)

The Faith Group Overview and Religious Practice Manual Plaintiff complained about took effect February 12, 2014. (EF No. 7-6 at 49, ECF Nos. 27-11. 27-14.) The grievance asserted civil rights violations, and as such, AR 740 required that it be filed within six months. (ECF No. 27-17 at 6 (AR 740.05.4.A, effective June 16, 2014).) The change in AR 810 of which Plaintiff complained was effective February 12, 2014. Therefore, Plaintiff had until August 12, 2014 to file his grievance. He did not file his grievance until October 2014; therefore, the grievance was properly rejected as untimely.

While Plaintiff stated in his first level grievance that Chaplain Carrasco was told not to approve any more incense for pagans on September 2, 2014, he made no mention of that detail in his informal level grievance, and the grievance focused on the elimination of the previously allowed religious items in the new version of AR 810.

In sum, the court finds that Plaintiff failed to properly exhaust his administrative remedies as to these claims in grievance 20062987519.

### c. Conclusion

The court finds that Plaintiff failed to exhaust his administrative remedies as to the Free Exercise and RLUIPA Claims against Cox, McDaniel, Foster, Stogner and Krause-LeGrand in Count I. Normally, the claims should be dismissed without prejudice, but because AR 740 allowed only six months to grieve these issues, Plaintiff could not remedy the exhaustion defect and summary judgment should be granted and the claims should be dismissed with prejudice.

### 3. Free Exercise and RLUIPA claims against Olivas in Count I

Plaintiff alleges that Olivas interfered with the religious grounds by destroying the sacred ritual area where Wiccans and other pagans practiced their faith. (ECF No. 7 at 8.)

Defendants argue they are unaware of any grievance filed concerning these allegations.

Plaintiff appears to argue that he exhausted his administrative remedies for his claim against Olivas in grievances 20062967563 and 20062962331. (ECF No. 33 at 7, 8.)

Plaintiff filed the informal level grievance for grievance 20062967563 on September 26, 2013. (ECF No. 7-4 at 36-46.) He asserted that LCC prison authorities were infringing the establishment and free exercise of religion by restricting the earth-based religion practices and what inmates could use to worship by denying the ability to observe the "animistic connections through plants, eight Sabbat observances, and wheel of the year." (*Id*. at 36, 37.) He went on to assert that the gods and goddesses require specific plant forms to observe their physical existence, and he had been denied the necessary plants to observe the eight Sabbats. (*Id*. at 37.)

He referenced a garden disbandment of 2005, stating that all vegetable gardens were to be removed from NDOC. (*Id.* at 39.) Then, on July 26, 2011, a second memorandum was issued to LCC prohibiting religious herbs from being grown for religious use. (*Id.*) On September 5, 2013, a correspondence kite was sent to Warden LeGrand, addressing a complaint that Lieutenant Olivas was abusing her administrative power and targeting the earth-based religious grounds by demanding religious plants be removed from the grounds and destroyed. (*Id.*) He stated that LeGrand and Olivas responded to the complaint on September 13, 2013. (*Id.*) From May to August of 2013, he claimed that the authorities solicited a list from the earth-based religious groups to consider what plants could be added to accommodate their religious needs, but it was rejected by Olivas. (*Id.* at 40.) He went on to assert that

16

Olivas forced the inmates to cut down and destroy authorized plants, and threatened inmates with charges if they failed to follow orders. (*Id*. at 41.)

This grievance was rejected as improper, advising Plaintiff that it is considered an abuse of the inmate grievance process under AR 740.09.2 when an inmate files a grievance that contains specific claims or incidents previously filed by the same inmate, referencing grievance 20062962331. (ECF No. 7-4 at 47.)

Plaintiff nevertheless filed a first level grievance, stating that grievance 20062967563 was not the same as 2006292331, arguing that grievance 20062967563 addressed a civil rights violation and violations of AR 810 and RLUIPA, while grievance 2006292331 centered on AR 710 vendor matters, and specifically, that no vendors existed to provide department approved vegetation. (ECF No. 7-4 at 48-49.) He stated that Olivas' conduct forced the removal of approved religious vegetation which created similarities in the grievances. (*Id*. at 49.) The first level grievance was rejected as improper for the same reason as the informal level. (*Id*. at 50.)

Plaintiff filed a second level grievance, arguing again that the grievance was not duplicitous. (ECF No. 7-5 at 1-.)  He stated that grievance 20062967563 came from a new act committed by Olivas on September 5, 2013, when she ordered approved sage plants to be removed from the religious grounds, and then ordering all other plants to be removed. (*Id*. at 2.) The second level grievance was rejected as improper. (*Id*. at 3.)

This grievance clearly asserted Olivas' interference with the religious grounds, and the court must now determine whether the grievance was properly rejected.

AR 740 considers it an abuse of the inmate grievance procedure when an inmate files a grievance that contains specific claims or incidents previously filed by the same inmate. (ECF No. 27-17 at 11, AR 740.09.2.B; ECF No. 27-18 at 9, AR 740.09.2.B.) The improper grievance memorandum for grievance 20062967563 specifically referenced grievance 20062962331. As such, the court must review grievance 20062962331 to determine whether grievance 20062967563 contains claims or incidents raised in grievance 20062962331.

Plaintiff filed the informal level of grievance 20062962331 on June 15, 2013. (ECF No. 7-4 at 10-12.) He asserted that earth-based religious groups were denied the right to purchase and grow

necessary plants for use on the pagan grounds. (*Id*. at 10.) He claimed he was denied the right to exercise his religious beliefs to grow, plant and harvest religious plants, and attempts to get approval to order the seeds and plants was denied by LCC, advising them that they could only plant department-approved vegetation obtainable via canteen services. (*Id*. at 11.) When Plaintiff contacted the canteen, they deferred to Olivas. (*Id*.) He asked that pagans be allowed to order the necessary seeds and plants to use on their religious grounds. (*Id*. at 12.) This grievance was denied at the informal level. (ECF No. 7-4 at 13.)

Plaintiff filed a first level grievance, dated August 1, 2013, stating: "This grievance addresses violations of earth based and Native American practitioners['] First Amendment rights to religious practices that observe fertility and life cycles of vegetation, and nature." (ECF No. 7-4 at 14-17.) He went on to state that NDOC did not provide an approved vendor to provide specific seeds and plants to allow these groups to practice their religion. (*Id*. at 15.) He claimed that the grievance addressed "the violation of the freedom to exercise a religious practice that is sincerely a core belief common with earth-base[d] and native American practices- that is to grow, cultivate and harvest plants specifically for religious observances and use." (*Id*.) He then discussed the NDOC Garden Memo (of 2005), which addressed cultivation of vegetation (edibles/drinkables), and stated there were no safety or security concerns of gardening vegetables at LCC on the earth-based or Native American religious grounds. (*Id*. at 16.) He then specifically referenced efforts made by LCC staff to remove, cut down, step on, desecrate and disrespect the grounds by destroying authorized plant vegetation and removing religious items from the grounds. (*Id*. at 16.) He claimed that one inmate was improperly allowed to provide a list of religious plants to the LCC administration. (*Id*.) He asked that input be collected from the members of these groups to update the approved list of vegetation, and provide a vendor who could accommodate them. (*Id*.)

The first level grievance was denied. (ECF No. 7-4 at 18.)

Plaintiff filed his second level grievance on October 3, 2013. (ECF No. 7-4 at 19-21.) There, he stated that the LCC administration was deciding for the earth-based religious groups what plants would be allowed, and ignored that a plant vendor was not available. (*Id*. at 19.) He reiterated: "This grievance is about LCC authorities creating a substantial burden to the free exercise of an established religious

practice material to the cycle of life and wheel of the year cultivation Sabbats central to religious worship rituals for blessings, planting, tending to and harvesting religious plants." (*Id*.) He claimed that LCC had denied the earth-based religious groups the right to exercise their beliefs in cultivating religious plants. (*Id*. at 20.) He asserted that Olivas attempted to insert her beliefs into the earth-based religious grounds. (*Id*. at 20-21.) He stated that RLUIPA and the Free Exercise Clause were violated because NDOC did not have an adequate, approved plant list recognizing the earth-based religious groups plants. (Id. at 21.) The second level grievance was also denied. (ECF No. 7-4 at 22.) Plaintiff signed for the second level grievance response on January 7, 2014. (*Id*. at 19.)

Grievance 20062962331 is focused on the list of religious vegetation/plants approved for use by the earth-based religious groups and access to a vendor to supply approved plants. Grievance 20062962331, references the belief by the Wicca that gods and goddesses require specific plant forms to observe their physical existence, and asserts that there were restrictions on the necessary plants, and the ability to plant, cultivate, tend to and harvest those plants and perform rituals and other religious practices with the plants. He specifically referenced his claim that between May and August 2013, LCC solicited a list from earth-based religious groups to consider what plants would be approved, but Olivas rejected the list and forced inmates to cut down and destroy authorized plants. The relief sought included stopping removal and destruction of the plants, but also asked for authorities to revisit the religious plant list and finding a vendor to sell the approved plants. (ECF No. 7-4 at 46.)

While there are some differences between the grievances, there is also some overlap. Both referenced the list of approved plants, vendors to provide such plants, and NDOC authorities removing plants. Accordingly, the court finds that NDOC properly rejected the grievance as an abuse of the grievance process under AR 740.09.2.

Insofar as Plaintiff relies on grievance 20062962331 as exhausting his administrative remedies on its own, the court reiterates that the operative complaint alleges that Olivas destroyed the sacred ritual area where Plaintiff and the other Wiccans/pagans practice their faith. (ECF No. 7 at 8.) Plaintiff's own grievance documentation concedes that Grievance 20062962331 focused on the list of approved religious plants and access to a vendor to supply approved plants. (*See* ECF No. 7-4 at 48-9, 7-5 at 2.) Therefore, grievance 20062962331 did not serve to exhaust the claims asserted against Olivas in this

action.

In sum, Plaintiff failed to exhaust his administrative remedies as to the Free Exercise Clause and RLUIPA claims asserted against Olivas in Count I. While the claims would ordinarily be dismissed without prejudice, AR 740 gives an inmate six months to raise such claims, and Plaintiff is well beyond that time frame and could not now properly exhaust his remedies. Therefore, summary judgment should be granted, and the claims should be dismissed with prejudice.

**4. Equal Protection Clause Claim against Cox, McDaniel, Foster, Krause-LeGrand, Stogner, and LeGrand**

The original Complaint had named Cox, McDaniel, Foster, Krause-LeGrand, Stogner and LeGrand. (ECF No. 6 at 1-4.) Count II of the original complaint, like Count II in the Amended Complaint, alleged that defendants excluded Wiccans from having access to the previously allowed religious items while more mainstream faith groups continued to have access to those items, and Defendants therefore elevated those groups over the Wiccans. (ECF No. 1-2 at 11, ECF No. 6 at 11.) When the court screened this claim in the original Complaint, it dismissed the claim with leave to amend because Plaintiff did not identify any specific defendants or attribute any of the alleged adverse action to a particular defendant. (ECF No. 5 at 6-7.)

When Plaintiff filed his Amended Complaint, while there was minimal elaboration, he essentially just placed the names of certain defendants before the allegations that he had already included in the original Complaint. (Compare ECF No. 6 at 11-12 and ECF No. 7 at 11-13, specifically ¶ 1 (including Cox, McDaniel, and Foster, Krause-LeGrand, Stogner and LeGrand), ¶ 2 (references the Defendants listed in ¶ 1), ¶ 3 (inserting names of Cox, McDaniel, Foster, Krause-LeGrand, Stogner and LeGrand before the same allegations that were asserted in ¶ 4 of the original Complaint), ¶ 9 (referencing the Defendants listed in ¶ 3).)

Defendants assert the same arguments they made with respect to the First Amendment and RLUIPA claims against these Defendants. (ECF No. 27 at 14.) Plaintiff asserts the same arguments in response. (ECF No. 33 at 9.) The court discussed these arguments in detail above, and finds, for the same reasons, that Plaintiff failed to exhaust his administrative remedies with respect to the Equal Protection Clause claim against Cox, McDaniel, Foster, Krause-LeGrand, Stogner, and LeGrand. Since Plaintiff

could not exhaust his administrative remedies now under AR 740, summary judgment should be granted and the claim should be dismissed with prejudice.

**5. Conspiracy Claims against Cox, McDaniel, Foster, LeGrand, Carpenter, Byrne, and Olivas**

Plaintiff alleges that these defendants fostered a policy of harassing cell searches directed at Wiccans and impeded Plaintiff's efforts to seek changes to the alleged discrimination policy. (ECF No. 7 at 13.)

Defendants argue that Plaintiff never grieved about an alleged conspiracy concerning fostering a policy of harassing him and other Wiccans through cell searches or impeding his ability to change the alleged policy. (ECF No. 27 at 14.) Insofar as this claim is predicated on grievance 20063012337, they argue, as they did above, that Plaintiff did not exhaust prior to filing his lawsuit. (ECF No. 27 at 14-15.)

Plaintiff argues that he exhausted his remedies through grievance 20063012337, as well as various other grievances, and that conspiracy is a legal theory that need not be asserted in a grievance in order to exhaust administrative remedies. (ECF No. 33 at 12.)

First, while specific legal theories need not be referenced, the facts giving rise to the legal theory need to be asserted so as to put prison officials on notice of the issue which the inmate is complaining. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). The court will address below whether the grievances Plaintiff identified as exhausting his administrative remedies for the conspiracy claims sufficiently put prison officials on notice.

**a. Grievance 20063012337**

The court has already determined that Plaintiff did not complete the grievance process for grievance 20063012337 *before* initiating his action; therefore, grievance 20063012337 did not serve to exhaust his administrative remedies as to the conspiracy claims. The court will now address whether that outcome changes in light of the filing of the Amended Complaint.

Plaintiff named each of these defendants in the original Complaint. (ECF No. 6 at 1-4.) Plaintiff alleged in the original complaint, as he does in the Amended Complaint, that Defendants fostered a policy of retaliatory and harassing cell searches, and that they impeded Plaintiff's efforts to seek changes to the alleged policy. (ECF No. 1-2 at 12, ECF No. 6 at 12.) When the court screened the conspiracy

claim in the original Complaint, it was dismissed with leave to amend because it did not connect the allegations to any particular defendant. (ECF No. 5 at 7.) In the Amended Complaint, he once again included the allegation that he sought redress through the grievance procedure, to no avail, and had submitted documents to the Religious Review Team to try and correct the problem., but was either interfered with or received no response. (Compare ECF No. 6 at 12 ¶ 11 and ECF No. 7 at 13 ¶ 10.) The Amended Complaint included an additional allegation that Krause-LeGrand was a caseworker after she had been a Deputy Attorney General, and married Defendant LeGrand. (ECF No. 7 at 13 ¶ 10.) He stated that this interfered with obtaining review of his grievances, and that Krause-LeGrand, Carpenter, Byrne, followed LeGrand's direction concerning religious grievances, which included sending Correctional Officers Parks, Ball and East to harass Plaintiff through repeated cell searches. (*Id*.)

Plaintiff then inserted the names of Cox, McDaniel, Foster, LeGrand, Carpenter, Byrne and Olivas before the allegation that they fostered an atmosphere where retaliation and harassment are the norm, and that retaliatory cell searches and actions were directed toward the Wiccan/Pagan religious grounds and beliefs. (*Compare* ECF No. 6 at 12 ¶ 12 and ECF No. 7 at 13 ¶ 11.)

The court cannot conclude that Plaintiff was adding a claim or defendant in the Amended Complaint when he really just inserted names of previously named defendants before allegations he had included in the original complaint. As such, Plaintiff did not exhaust his administrative remedies via grievance 20063012337 when he filed his Amended Complaint.

### b. Grievance 20062958259

Plaintiff filed this grievance on February 28, 2013, alleging that on February 28, 2013, two correctional trainee officers searched his cell and removed personal and religious property. (ECF No. 7-1 at 12.) Plaintiff asked East for an unauthorized property form listing the confiscated items, and East responded that it was trash. (*Id*. at 13.) He noticed that items were missing and sent a kite, which was forwarded to Ball. (*Id*. at 14.) In the grievance, Plaintiff specifically states: "The grievance being filed here contends I am now missing personal property that was confiscated during a routine random cell search." (*Id*.) He claimed that East failed to properly supervise the cell search, and that there was a policy that an inmate could not observe a cell search. (*Id*. at 5.)

This grievance did not allege that there was a policy of harassing cell searches targeted at Wiccans so as to put prison officials on notice of the conspiracy claims he asserts in this action.

### c. Grievance 20062960797

Plaintiff filed this grievance on May 7, 2013. (ECF No. 7-1 at 48-50, ECF No. 7-2 at 1-2.) He sought to establish liability for theft and loss of property taken by East and two trainees on February 28, 2013. (*Id*.) He took issue with East's failure to provide an unauthorized property form. (*Id*.)

This grievance did not allege that there was a policy of harassing cell searches targeted at Wiccans so as to put prison officials on notice of the conspiracy claims he asserts in this action.

### d. Grievance 20062960796

Plaintiff filed this grievance on May 7, 2013, concerning the loss of property on February 28, 2013. (ECF No. 7-3 at 13-18.) It discussed an incident on February 28, 2013, where Plaintiff claimed East and two trainees searched his cell and took property without providing an unauthorized property form, and Ball failed to intervene. (*Id*.)

This grievance did not allege that there was a policy of harassing cell searches targeted at Wiccans so as to put prison officials on notice of the conspiracy claims he asserts in this action.

### e. Grievance 20062982077

Plaintiff filed grievance 20062982077 on July 17, 2014, and it states that it was being filed against Parks for statements Parks made on July 12, 2014. (ECF No. 7-5 at 30-33) Plaintiff asserted that Parks searched his cell on July 12, 2014, and removed approved religious oil. (*Id*. at 31.) He asked Parks why he was being searched and why his religious property was constantly being taken, and Parks responded: "Maybe you should change your religion and your problems will stop." (*Id*. at 31-32.) He said that this was constantly being done to him and not his cellmate. (*Id.* at 32.) He requested a transfer to NNCC, stating that he could not practice his religion at LCC without fear of retaliation, reprisal and harassment. (*Id*.)

Plaintiff was specifically advised in response to his informal level grievance that consideration was limited to the complaints concerning Officer Parks because it is an abuse of the grievance process to file a grievance containing two or more appropriate issues. (ECF No. 7-5 at 34.) Therefore, this grievance did not serve to exhaust any claims of a policy of cell searches targeting Wiccan inmates.

### f. Grievance 20062986471

Plaintiff filed this grievance on October 9, 2014. (ECF No. 7-6 at 4-12.) Plaintiff specifically stated that grievance 20062986471 was addressing a property claim when his religious property was taken by Parks on July 12, 2014, so as not to run afoul of AR 740's prohibition on grieving multiple issues in a single grievance. (*Id*. at 4.) Therefore, it did not exhaust claims of a policy of cell searches targeting Wiccan inmates.

### g. Grievance 20062987519

Plaintiff filed this grievance on October 28, 2014. (ECF No. 7-6 at 40- 48.) In this grievance, he asserted that AR 810 violated his rights to exercise his religious beliefs as a Wiccan related to the removal of religious items from AR 810 that were previously allowed. (*Id*.)

The grievance did not raise the facts giving rise to his conspiracy claim, and did not serve to exhaust his administrative remedies on that claim.

### h. Grievance 20062953532

Plaintiff filed this grievance on December 9, 2012. (ECF No. 7 at 22-26.) In it, he asserted that correctional officers were continuously frustrating his right to practice Wicca in his cell by confiscating authorized religious items during cell searches. (*Id*. at 23.) He asserted that his cell was routinely searched by officers under authority of their superiors on a frequent basis, and the only thing searched was his religious property. (*Id*. at 24.) He went on to state that he was subjected to the searching officers' personal religious beliefs when he was informed what religious items were for use as natural items, and that he is not allowed to possess personal religious property inside his cell. (*Id*. at 25.) He asked that staff be educated concerning religious tolerance, and for identification of religious property items under AR 810, and that cell searches be properly documented. (*Id*. at 26.) The grievance was denied. (ECF No. 7 at 27.)

He filed his first level grievance on February 11, 2013. (ECF No. 7 at 28-33.) The first level grievance was also denied. (ECF No. 7 at 34.)

Plaintiff filed his second level grievance on March 11, 2013. (ECF No. 7 at 35-42.) It was denied (ECF No. 7 at 43), and Plaintiff signed for the second level response on March 7, 2013. (ECF No. 7 at 28.)

24

This grievance arguably placed prison officials on notice of the conspiracy claims Plaintiff is asserting; however, the court finds the claims asserted in this grievance are barred by the applicable statute of limitations.

Section 1983 does not contain its own statute of limitations; therefore, federal courts borrow the statute of limitations for section 1983 claims applicable to personal injury claims in the forum state. *See Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). In Nevada, the statute of limitations for personal injury claims, and therefore section 1983 actions brought here, is two years. Nev. Rev. Stat. 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).

"A statute of limitations begins to run on the date on which the plaintiff's claim 'accrues.'" *Pouncil*, 704 F.3d at 573 (citation omitted). "Federal law determines when a cause of action for a Section 1983 claim accrues and, hence, when the statute of limitations begins to run." *Id.* (citation omitted). Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.* at 574 (citation omitted).

Federal courts apply the forum state's law regarding tolling, including equitable tolling, when not inconsistent with federal law, to civil rights claims filed under section 1983. *Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000) (citations omitted). "[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) (citations omitted).

Even if the statute of limitations were tolled until Plaintiff signed for the second level grievance response on March 7, 2013, he would have had until March 7, 2015 to file his complaint. Plaintiff did not file his action until November 30, 2015 (ECF No. 1-2); therefore, to the extent he raised the conspiracy claim in this grievance and exhausted his administrative remedies, the claim is barred by the statute of limitations.

### i. Conclusion

The only grievance that served to put prison officials on notice of the conspiracy claims and was completely exhausted prior to the initiation of this litigation is grievance 20062953532; however, the conspiracy claims raised in that grievance are barred by the statute of limitations. As a result, summary

judgment should be granted and the conspiracy claims should be dismissed with prejudice.

**B. Statute of Limitations - First Amendment Free Exercise Clause and RLUIPA Claims Against East and Ball**

Plaintiff alleges that East and Ball deprived him of his religious property. (ECF No. 7 at 9.) He avers that they did so through multiple targeted cell searches. (*Id.*)

Defendants state that Plaintiff did go through the grievance process with respect to his allegations that East and Ball deprived him of religious property in grievances 20062960797, 20062960796, and 2006295829. ((ECF No. 27 at 15, citing Exhibits D-F, ECF Nos. 27-6, 27-7 and 27-8.) They contend, however, that even accounting for tolling while he completed the grievance process, his claims against East and Ball are barred by the statute of limitations.

**1. Grievance 20062960797**

Plaintiff filed his informal level grievance for grievance 20062960797 on May 7, 2013, concerning an incident involving East which occurred on February 28, 2013, where he claimed that East and two trainees took his religious property during a cell search, and Ball ignored his requests concerning the claim. (ECF No. 27-6 at 15, 16-19.) The informal level grievance was denied, stating that Plaintiff failed to provide evidence in support of his claim. (ECF NO. 27-6 at 16.)

Plaintiff filed a first level grievance on June 27, 2013. (ECF No. 27-6 at 10, 12-14.) The first level grievance was denied as improper because Plaintiff did not include the original, canary and pink copies, and he was advised to re-submit. (ECF No. 27-6 at 11.) He re-submitted the first level grievance. (ECF No. 27-6 at 5, 7-9.) It was denied, stating that East indicated that the only items taken were trash. (ECF No. 27-6 at 6.)

Plaintiff filed his second level grievance on September 1, 2013. (ECF No. 27-6 at 2, 4.) It is signed by the deputy director and dated November 15, 2013. (ECF No. 27-6 at 2.) Plaintiff's signature under the response portion of the form appears to be December 2, 2013. (*Id.*)

The standard for the statute of limitations applied to claims brought under section 1983 is set forth above. Here, the grievance alleges that the search in question took place on February 28, 2013. As set forth above, under federal law, a claim accrues "when the plaintiff knows of or has reason to know of the injury that is the basis of the action." *Pouncil*, 704 F.3d at 574 (citation omitted). Plaintiff's own

grievance assert that he complained about the incident to other officers on February 28, 2013, so he knew of the injury that is the basis of the action at that point. Therefore, that is when the claim accrued and the statute of limitations began to run. Plaintiff filed his informal level grievance on May 7, 2013, so sixty-eight days of the two-year statute of limitations had expired. The statute of limitations period was then tolled from May 7, 2013 to December 2, 2013, when Plaintiff signed the second level response. Therefore, Plaintiff had two years from December 2, 2013, less the sixty-eight days that had already passed under the statute of limitations, to file his complaint. In other words, he had until September 25, 2013 to file his action. Plaintiff filed this action November 30, 2015, over two months after the statute of limitations expired.

Even if the court takes as true Plaintiff's claim that his claim did not accrue until April 24, 2013 (ECF No. 33 at 17), thirteen days passed between this date and May 7, 2013, when he filed the informal level grievance. If the statute of limitations were tolled until December 2, 2013, when Plaintiff signed for the second level response, less the thirteen days, Plaintiff would have had until November 19, 2013 to file his action. He did not file the complaint until November 30, 2015; therefore, the action is still barred by the statute of limitations insofar as grievance 20062960797 is concerned.

**2. Grievance 2006296076**

Plaintiff filed the informal level grievance for grievance 2006296076 on May 7, 2013, concerning his allegation that on February 28, 2013, East and two trainees searched his cell and took his religious property, while Ball ignored Plaintiff's attempts to notify him of the confiscation. (ECF No. 27-8 at 10, 12-24.) The first level grievance was denied on June 20, 2013. (ECF No. 27-8 at 11.) He filed his first level grievance on June 27, 2013. (ECF No. 27-8 at 4, 6-9.) It was denied. (*Id*. at 5.) He filed his second level grievance on September 1, 2013, which was denied November 11, 2013, and Plaintiff signed for it on December 2, 2013. (ECF No. 27-8 at 2-3.)

The same analysis as was set forth with respect to grievance 20062960797 applies to grievance 2006296076; therefore, to the extent the claims against East and Ball were raised in grievance 2006296076, they are barred by the statute of limitations.

/ / /

/ / /

### 3. Grievance 2006295829

Plaintiff filed his informal level grievance for grievance 2006295829 on February 28, 2013, asserting that on that day, two trainee officers searched his cell and removed his personal and religious property. (ECF No. 27-7 at 67-72.) When he asked East for the unauthorized property form itemizing the property taken, East told him the bag taken was trash. (Id.) He notified Ball. (Id.) Plaintiff went through all levels of the grievance process. The second level grievance is signed by the deputy director on June 21, 2013, and Plaintiff signed for the second level grievance on

July 5, 2013. (ECF No. 27-7 at 2.)

Plaintiff specified that this grievance was a property claim. (ECF No. 27-7 at 69.) It was not the grievance asserting civil rights violations against these defendants. Even if it did serve to exhaust the civil rights claims against East and Ball, the claims would be barred by the statute of limitations. Plaintiff signed for the second level grievance on July 5, 2013, and if the court assumed that the statute of limitations was tolled for the entire time period until July 5, 2013, Plaintiff would have had until July 5, 2015, to file his action. He did not file his complaint until November 30, 2015; therefore, the claims are barred by the statute of limitations.

## C. Retaliation Claim against Parks

### 1. Retaliation Standard

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

### 2. Analysis

Plaintiff alleges that Parks subjected him to oppressive cell searches because of his religion, which were intended to chill his right to practice his religion without advancing any legitimate

correctional goal. (ECF No. 7 at 9.) He claims that Parks told him that the oppressive cell searches would stop if he changed his religion. (*Id*.)

Parks maintains that he did not search Plaintiff's cell or confiscate certain property due to Plaintiff's First Amendment conduct, and the search did not chill Plaintiff's First Amendment rights. (ECF No. 27 at 17.) Parks argues that he does not choose what cells are searched, but they are picked by the shift lieutenant, and the searches are performed randomly for safety and security reasons. (*Id*.; Parks Decl., ECF No. 27-2 ¶ 3)

Parks states that on July 12, 2014, Plaintiff's name was on the list of cells to be searched that day, provided by the shift lieutenant. (ECF No. 27 at 18; Parks. Decl., ECF No. 27-2 ¶ 5.) According to Plaintiff's cell search log, Parks only ever searched Plaintiff's cell one time. (ECF No. 27 at 18, ECF No. 27-9, ECF No. 27-9 at 12.) During this search, the items confiscated included one bottle containing an unknown liquid. (ECF No. 27 at 18, ECF No. 27-9 at 12; Parks. Decl., ECF No. 27-2 ¶ 5.) Plaintiff claims the bottle contained baby oil (ECF No. 27-10 at 5), which was permitted religious property (ECF No. 27-11 at 3)[4], but the NDOC Religious Practice Manual requires religious property to conform with AR 711. (ECF No. 27-14 at 28.)[5] While baby oil is an approved religious item, if it is altered in any way, it is contraband subject to confiscation, as contraband includes authorized property that has been altered. (ECF No. 27 at 18, ECF No. 27-16 at 13.) Here, Parks contends that the baby oil was in a bottle with a label held on with tape, which is not the way Plaintiff would have purchased it, making it impossible for prison staff to verify its contents. It was for this reason that Parks confiscated it. (ECF No. 27 at 18; Parks. Decl., ECF No. 27-2 ¶ 5.) In addition, Defendants contend they made multiple efforts to resolve this issue, by offering to replace the bottle with a new bottle of baby oil, and Plaintiff refused. (ECF No. 27 at 18; ECF No. 27-10 at 4.)

/ / /

---

[4]     AR 810.2 Faith Group Overview Chart states that "[o]il, anointing oil- Standard baby oil (mineral oil) is allowable to all faith groups and is "available from the Canteen only." (ECF No. 27-11 at 3.)

[5]     AR 711 provides that inmates may not possess property that is not authorized. (ECF No. 27-15 at 3.)

Plaintiff appears to admit that Parks was ordered to search his cell, but nevertheless maintains that Parks confiscated Plaintiff's religious property because Plaintiff was a practicing Wiccan. (ECF No. 33 at 19-21; Pl. Aff., ECF No. 34-7 at 20-26.) Plaintiff contends that Parks searched only Plaintiff's property, not his cellmate's, and took only religious property items, including baby oil seeds and flowers. (ECF No. 33 at 20; Pl. Aff., ECF No. 34-7 at 21.) Plaintiff claims that he told Parks that the property was authorized and he planned to use it in the Full Moon Lunar Esbat ceremony, and Parks said: "You are not authorized to have group items in your cell-you have been told this." (*Id*.) Plaintiff asked him why the officers kept taking his religious property and frustrating his religious practices, and asserts that Parks became irritated and said: "Perhaps you should change your religion and your problems will go away." (ECF No. 33 at 20; Pl. Aff., ECF No. 34-7 at 21-22; *see also* Gibson and Altamirano[6] Declarations, ECF Nos. 34-5 at 11-16.) Parks also disputes that the bottle was altered, claiming that the property room sergeant had placed tape on the bottle, and Parks removed the tape, altering the bottle. (ECF No. 33 at 28.)

The court finds that there are genuine disputes as to material facts concerning whether Parks confiscated items from Plaintiff's cell during a search because of Plaintiff's First Amendment activity, whether this conduct chilled Plaintiff's exercise of his First Amendment rights, and whether the action reasonably advanced a legitimate correctional goal.

First, as to causation, the inmate "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent[.]" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)). The evidence can be either direct or circumstantial, and circumstantial evidence may include that the defendant expressed opposition to the protected activity, or evidence that the reasons set forth by the defendant for the adverse action are pretextual. *See McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (citation omitted).

/ / /

---

[6] Plaintiff submitted the declaration of inmates Ronald Gibson and Andres Altamirano to corroborate his claims as to what Parks said.

While Plaintiff admits the search was ordered, Plaintiff presents evidence presenting a factual question as to Parks' intent in confiscating the religious items. Plaintiff states that he asked Parks why he was being searched so often and why his religious items were being taken and Parks responded: "Perhaps you should change your religion and your problems will go away." Taken in the light most favorable to Plaintiff, this statement is evidence of retaliatory motive on Parks' part, *i.e.,* that his property was being taken because of his religion.

Next, "an objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his [protected conduct] was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim,* 584 F.3d at 1271 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 568-69 (9th Cir. 2005)).

Taken in the light most favorable to Plaintiff, Parks' statement that if Plaintiff changed his religion his problems might go away, is also evidence that Parks' action would chill a person of ordinary firmness from practicing his religion in the future.

Finally, Parks asserts that the search and confiscation furthered a legitimate correctional goal because he was simply performing a search pursuant to orders and took items that were altered or otherwise unauthorized. Neither party addresses the *Turner* factors, but Plaintiff has introduced evidence that creates a genuine dispute as to whether the search was just a random search performed according to orders, and as to whether the items confiscated were actually altered and subject to confiscation.[7]

In sum, Defendants' motion should be denied as to the retaliation claim against Parks.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' motion (ECF No. 27), **EXCEPT** the motion should be **DENIED** as to the retaliation claim against Defendant Parks.

---

[7]

In *Brodheim*, the Ninth Circuit said that "in determining whether a proffered legitimate penological interest is reasonably related to a regulation which infringes on a prisoner's constitutional right" the court must consider the "four factors set forth in *Turner v. Safley*, 482 U.S. 78." *Brodheim*, 584 F.3d at 1272 (citations omitted).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: August 17, 2017.

_William G. Cobb_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE