# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH M. ANDERSON,<br><br>    Plaintiffs,<br><br>vs.<br><br>NEVADA DEPARTMENT OF<br>CORRECTIONS et al.,<br><br>    Defendants. | 3:16-cv-00056-RCJ-WGC<br><br>ORDER |

Before the Court is the Plaintiff's last surviving claim, a 42 U.S.C. § 1983 action, against the Defendant, Jethro Parks, for retaliation for rights guaranteed by Religious Land Use and Institutionalized Persons Act (RLUIPA). The case arises out of an incident where the Defendant searched the Plaintiff's prison cell and confiscated items purported to be used in religious practices allegedly in retaliation towards the Plaintiff's religion. Now pending is Magistrate Judge William G. Cobb's Report and Recommendation ("R&R"). (ECF No. 205.) Because Judge Cobb found that genuine disputes of material fact remained, he recommended that the Court dismiss both Plaintiff's Motion for Partial Summary Judgment (ECF No. 183) and Defendant's Renewed Motion for Summary Judgment (ECF No. 193). The Court finds that there is no genuine dispute of material fact and adopts the R&R in part and rejects the R&R in part. The Court dismisses the Plaintiff's Motion for Partial Summary Judgment and grants the Defendant's Renewed Motion for Summary Judgment.

# I. BACKGROUND

The Court agrees with and adopts the R&R's summary of the background of this case.

# II. LEGAL STANDARDS

## A. Retaliation

Under the Ninth Circuit case law, a prisoner can state a claim for retaliation for rights guaranteed by RLUIPA when five elements are satisfied:

(1) An assertion that a state actor took some adverse action against an inmate
(2) because of
(3) that prisoner's protected conduct, and that such action
(4) chilled the inmate's exercise of his rights, and
(5) the action did not reasonably advance a legitimate correctional goal.

*Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (citation omitted).

"[A] retaliation claim may assert an injury no more tangible than a chilling effect on [the exercise of the plaintiff's] rights." *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), citing *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997). "[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009).

In order to satisfy the second and third elements, a plaintiff must plead and prove that the defendant committed the adverse action with a "the substantial or motivating factor" in retaliation to the plaintiff's protected conduct. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

"[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 568-69 (9th Cir. 2005)).

///

Lastly, the Plaintiff must prove the action taken by the state actor did not have a legitimate penological goal. In *Turner v. Safley*, the Supreme Court has identified four factors for the courts to consider whether there is a valid penological interest. 482 U.S. 78, 89-91 (1987). "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* at 89. Next, the courts should consider the reasonableness of the action, i.e., whether there are alternative avenues for a plaintiff to exercise his protected conduct. *Id.* at 90. The third consideration is the burden on the guards to accommodate the plaintiff. *Id.* Finally, the courts should consider whether there are reasonable, less restrictive alternatives. *Id.* This last factor does not require that the institution utilize the least restrictive alternative, however, the existence of a reasonable, inexpensive alternative is evidence of there not being a valid penological goal. *Id.* at 90-91.

**B.     Summary Judgment**

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24.

If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249-50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine

dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

C.  **Qualified Immunity**

The doctrine of qualified immunity bars Plaintiff's claims. The doctrine of qualified immunity shields government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine exists to afford "government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley*, 475 U.S. at 341). Where a defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

Resolving the issue of qualified immunity involves a two-step inquiry. First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the state actor's conduct violated a constitutional right. Second, if a constitutional violation occurred, a court must further inquire whether the right "was clearly established at the time of the [government actor's alleged [mis]conduct." *Al-Kidd*, 563 U.S. at 735. A right is clearly established when "'[t]he contours of [a] right [are] sufficiently clear' [such] that every 'reasonable official would have understood that what he [was] doing violates that right.'" *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[E]xisting precedent must have placed the statutory or

1  constitutional question beyond debate." *Id.* "If the law did not put the [officials] on notice that
2  [their] conduct would be clearly unlawful, summary judgment based on qualified immunity is
3  appropriate." *Saucier*, 533 U.S. at 202.

4  The Court has mandated that the "clearly established right must be defined with specificity.
5  *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (finding that the Ninth Circuit erred
6  when defining the right as "the right to be free from excessive force."). "This Court has repeatedly
7  told courts—and the Ninth Circuit in particular—not to define clearly established law at a high
8  level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *City and County of*
9  *San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-1776 (2015)).

## III. ANALYSIS

### A. Defendant's Renewed Motion for Summary Judgment

The Court disagrees with the R&R and finds that qualified immunity protects the Defendant. This Court finds that the record, taken on whole, presents no genuine disputes of material facts such that the right particularized to this case is not clearly established.

Before addressing the test for qualified immunity, upon review of the record, the Court finds that there are no genuine disputes of material fact. First, the Court finds beyond dispute that the Defendant was ordered to search the Plaintiff's cell—the search was not motivated by the Plaintiff's religion. The Defendant in his declaration testifies that he was on duty on the day in question and the Plaintiff's name was on the list to be searched provided to the Defendant by his superior. (Parks Decl., ECF No. 27-2.) The prison search log indicates that the Defendant has only ever searched the Plaintiff's cell on one occasion and only confiscated the one bottle. (Def. Mot. for Summ. J, EX. G at 11.) The Plaintiff also appears to admit that the Defendant was ordered to search his cell by his superior. (Pl. Aff., ECF No. 34-7 at 20-26.)

///

Second, the Court finds beyond dispute that the bottle had been altered, thus, the Defendant properly confiscated the bottle under Nevada Department of Corrections Administrative Regulations 711. Here, the Defendant attests to the fact that the bottle had been altered by having a taped-on label. (Parks Decl. ECF No. 27-2.) The Plaintiff's declarant, Ronald Gibson, states in Paragraph 5 of his declaration that the bottle had a "white lable [that was] falling off" [sic]. (Gibson Decl., ¶ 6 ECF No. 184-8.) Plaintiff's other declarant, Andres Altamirano, states that the Defendant took the bottle, because "[H]e could not see a label on the bottle." (Altamirano Decl., ¶ 8 ECF No. 184-8.) Further, even the Plaintiff in a grievance report noted that the bottle had been previously altered. (Def. Renewed Mot. for Summ. J., Ex. A 8 of 37, ECF 193-1.) Accordingly, every reasonable trier of fact would find that the label had been altered.

Third, the Court finds that it is beyond dispute that the Plaintiff was offered a new bottle of baby oil for his religious ceremonies during the grievance process. The Inmate Grievance Reports make clear that the Property Sergeant offered the Plaintiff a similar, new bottle of baby oil, but Property Sergeant notes that the Plaintiff refused under the belief that it would hinder his court case. (Def. Summ. J. Mot. Ex. A at 10 of 31 and Ex. H at 4 of 37).

The Court does agree with Judge Cobb that there is a genuine dispute between whether the Defendant said disparaging remarks about the Plaintiff's religion. The Defendant denies making these claims. However, the Plaintiff attests in his affidavit that the Defendant said, "Maybe you should change your religion and your problems will stop." (Pl. Aff., ¶¶ 6-8.) Two declarants also attest that they overheard this conversation and corroborate the Plaintiff's allegations. (Gibson Decl., ¶ 15; Altamirano Decl., ¶ 10.) However, the Court finds that this fact, standing alone, is not material for the analysis of whether the Defendant is protected by qualified immunity.

///

///

In *Emmons*, the Supreme Court found that citing to generalized right—"The right to be free of excessive force"—for the purposes of qualified immunity was improper. 139 S. Ct. at 502. Rather, the Supreme Court posited that the right should have been tailored to the facts of the case. *Id.* The Court has emphasized how a state actor under similar circumstances has violated a person's rights as to make that right clearly established. *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018).

Applying the Supreme Court precedent, the allegedly aggrieved right of the Plaintiff in this particularized setting is to be free from disparaging remarks made by the Defendant during a random cell search and confiscation of contraband, albeit religious property, when a free replacement was subsequently offered to the Plaintiff. The facts do not show that the Defendant violated a clearly established right of the Plaintiff.

First, the Court finds that the Defendant had a valid penological goal to search the Plaintiff's cell and to confiscate the property. The Defendant could not be able to identify the liquid in the container in it altered state, further there was an alternative offered to the Plaintiff and he refused to accept the replacement. Additionally, the Court notes that there was a valid penological goal for the Defendant to confiscate the bottle regardless of whether he made such disparaging remarks. *See Turner*, 482 U.S. at 89-91. Accordingly, there was no violation of the Plaintiff's rights with these actions.

Second, assuming without deciding that the Defendant's alleged remarks violated the Plaintiff's rights, this Court finds that such a right was not clearly established at the time that the Defendant acted. The closest, then-existing precedent this Court can find is in *Brodheim* where the Ninth Circuit found that threats made to an inmate that prevent or interfere with filing a grievance report violate an inmate's rights. 584 F.3d at 1271. There, "a prison official denied Brodheim's written 'interview request,' and noted on the denial that Brodheim should be 'careful' what he

writes and requests in his administrative grievances." *Id.* at 1264. The statement was followed up "by a request from the same official that Brodheim be transferred . . . due to his filing of grievances and this lawsuit." *Id.* Here, the statement made by the Defendant did not interfere with or threaten one of the Plaintiff's rights when the context is particularized as required by the Supreme Court. The statement here was made in reference to a lawful search and seizure of contraband in response to a question from the Plaintiff, unlike *Brodheim* where the statement was made in the context of the right to file a grievance report and lawsuit and was followed by an effort to transfer the inmate who filed the grievance report. Thus, this Court cannot conclude that "existing precedent [has] placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152.

It would be improper to consider the context and right generally and to analyze the statement but ignore the lawful search and seizure of clearly identifiable contraband. As the Supreme Court has reiterated: qualified "immunity protects all but the plainly incompetent or those who knowingly violate the law" and it has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Id.* (citation and internal quotation marks omitted). Here, when adequately particularizing the right in the context of a lawful search and seizure, the right was not clearly established, therefore, qualified immunity protected the Defendant's actions.

**B.   Plaintiff's Motion for Partial Summary Judgment**

Since the Court grants the Defendant's Renewed Motion for Summary Judgment, the Court does not need to address the Plaintiff's Motion for Partial Summary Judgment.

## IV. CONCLUSION

IT IS HEREBY ORDERED that the Report and Recommendation is (ECF No. 205) is ADOPTED IN PART and REJECTED IN PART.

///

IT IS FURTHER ORDERED that the Plaintiff's Motion for Partial Summary Judgment (ECF No. 183) is DENIED.

IT IS FURTHER ORDERED that the Defendant's Renewed Motion for Summary Judgment (ECF No. 193) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 21st day of March 2019.

_____
ROBERT C. JONES
United States District Judge